UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BRYAN CARY,                                    Case No. 17-13632

      Plaintiff                            Robert H. Cleland
v.                                             United States District Judge

ANTHONY STEWART, *et al*,                      Stephanie Dawkins Davis
                                               United State Magistrate Judge
      Defendants.

_____/

**REPORT AND RECOMMENDATION**
**MOTION TO DISMISS OR FOR SUMMARY JUDGMENT (Dkt. 16)**

## I.     PROCEDURAL HISTORY

Plaintiff, a prisoner in the custody of the Michigan Department of
Corrections, filed this civil rights lawsuit on November 3, 2017.  (Dkt. 1).  District
Judge Robert H. Cleland referred this matter to the undersigned for all pretrial
proceedings.  (Dkt. 14).  On February 5, 2018, defendants filed a motion to dismiss
or for summary judgment.  (Dkt. 16).  Plaintiff filed a motion seeking limited
discovery on the issue of exhaustion in order to respond to defendants' motion.
(Dkt. 18).  While plaintiff had already filed a response to the motion to dismiss or
for summary judgment (Dkt. 24), the Court granted plaintiff's motion and allowed
for a period of discovery regarding exhaustion and allowing plaintiff 28 days after
the close of discovery to file his response to the motion to dismiss or for summary
judgment.  (Dkt. 25).  Defendants filed a reply on April 5, 2018.  (Dkt. 26).  After

the close of the limited discovery period, which expired in early June, plaintiff did not file any amended or supplemental response to the motion to dismiss or for summary judgment, within 28 days thereafter as allowed by the Court's April 2 Order.  (Dkt. 25).

For the reasons set forth below, the undersigned **RECOMMENDS** that defendants' motion for summary judgment as to plaintiff's retaliation claim and as to any claims against defendant Russell be **GRANTED** for failure to exhaust administrative remedies.  The undersigned further **RECOMMENDS** that defendants' motion to dismiss plaintiff's First Amendment Free Exercise claim be **DENIED**, that defendants' motion to dismiss plaintiff's Equal Protection claim be **GRANTED**, that defendants' motion to dismiss plaintiff's substantive due process claim be **GRANTED**, and that defendants' motion for summary judgment on plaintiff's procedural due process claim be **GRANTED**.  Finally, the undersigned **RECOMMENDS** that the Court decline to exercise supplemental jurisdiction over plaintiff's state law Ethnic Intimidation claim, and **DISMISS** this claim without prejudice.

## II.    FACTUAL BACKGROUND

This case is about plaintiff's First Amendment right to practice his religion, the Native American Traditional Ways (NATW).  As part of his religious practice, plaintiff has a medicine bag containing sacred herbs, which are used for protection,

prayer, and offerings.  (Dkt. 1, Pg ID 4).  Plaintiff contends that his possession of

the medicine bag and herbs is permitted by MDOC Policy Directive 05.03.150.  *Id*.

Despite the policy directive and his constitutional rights, plaintiff alleges that

defendants Laing, Smith, Stewart and other unknown persons had his herbs taken

and restricted.  He also alleges that they falsified policy language in order to take

and restrict the herbs.  According to Laing, PD 05.03.150 says that "only two (2)

braids of sweet grass are allowed outside of the prisoner's medicine bag to

contribute to the religious practice of smudging.  Anything else is considered by

MDOC policy to be excessive property."  *Id*. (citing Dkt. 1, Ex. A, Notice of

Intent).

     Plaintiff asserts that the policy directive actually states that he can have:

"Two braids of sweet grass for smudging during group religious ceremonies and

activities unless sweet grass is also part of the contents of medicine bag; maximum

one braid per order."  (Dkt. 1, Pg ID 4). According to plaintiff, this clearly means

two braids of sweet grass for group services and one braid for the prisoner are

permitted.  Plaintiff also alleges that the policy does not state that the herbs must

be in the medicine bag, and it does not state that herbs outside the medicine bag are

excess property.  Plaintiff maintains that braids of sweet grass are 12 inches long

and would not fit in a 3x5 medicine bag.  The handbook of religious groups

provides that plaintiff can have sacred medicines which are herbs.  More

specifically, plaintiff is permitted to have herbal "Kinnikinnick," which is a mixture of herbs. This handbook does not state that herbs are required to be in the medicine bag. Plaintiff says he is allowed to have his herbs and he cannot practice his religion without them. He alleges that defendants are completely restricting him from practicing his religion in a manner that is allowed by policy, which violates his constitutional right to freely exercise his religion. *Id*.

Plaintiff also alleges that defendants have violated his Equal Protection rights because they have only searched his belongings and not those of other Native American prisoners to see if they have herbs outside of their medicine bags. (Dkt. 1, Pg ID 5, citing Ex. D, Declarations attached to the complaint). Plaintiff further avers that defendants do not take and restrict rosaries, Qurans, or Bibles. Here, plaintiff contends that defendants falsified policy language three different times in order to take and restrict his sacred herbs that are allowed. Plaintiff maintains that he is not being treated like those who are similarly situated. *Id*.

Plaintiff also contends that defendants are retaliating against him for filing grievances and lawsuits about his herbs. (Dkt. 1, Pg ID 5). He states that defendants bullied plaintiff into a writing a statement allowing Laing to hold the herbs in his office. Plaintiff did not want to do this, but he was told the herbs would be donated, destroyed, or mailed home. Laing told plaintiff that the reason

the herbs were being taken was because he "made a big deal out of the situation." *Id*. (citing Ex. E, plaintiff's declaration).

Plaintiff also asserts a due process claim. (Dkt. 1, Pg ID 5). He claims that King knew plaintiff's herbs were taken and restricted. Plaintiff was attending a fact-finding hearing on October 24, 2017 conducted by ARUS Doss. King came into the hearing without a valid reason, stopped it and told plaintiff to go to lock down without allowing plaintiff to argue in his own defense. King also refused to provide plaintiff with copies of the documents. Plaintiff says he was engaged in protected conduct and King denied him due process. *Id*.

Plaintiff additionally asserts a claim under Michigan's Ethnic Intimidation statute. (Dkt. 1, Pg ID 5). According to the complaint, defendants are clearly singling out plaintiff because of his race and religion. And, when plaintiff filed grievances and sued, defendants retaliated in a malicious manner to harass and intimidate plaintiff. Plaintiff alleges that defendants have made it clear that they are not going to return confiscated herbs, and their malicious intent is evidenced by their actions in falsifying policy language in order to take and restrict his herbs. He says they are clearly trying to destroy the herbs. Thus, plaintiff maintains that Michigan's Ethnic Intimidation statute has been violated. *Id*.

## III.   ANALYSIS AND CONCLUSIONS

### A.   Standards of Review

#### 1.   Summary Judgment[1]

When a party files a motion for summary judgment, it must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). "A party asserting that a fact cannot be or is genuinely disputed must support that assertion by: (A) citing to particular parts of materials in the record...; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed.R.Civ.P. 56(c)(1). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 251-52 (1986)). Furthermore, the evidence and all reasonable inferences must be

---

[1] While some judges in this District have treated motions for summary judgment on the issue of failure to exhaust administrative remedies as unenumerated motions to dismiss under Rule 12(b)(6), *see e.g.*, *Neal v. Raddatz*, 2012 WL 488827 (E.D. Mich. Jan. 12, 2012), report and recommendation adopted in pertinent part, 2012 WL 488702 (E.D. Mich. Feb. 15, 2012), other judges have concluded that such a practice is not appropriate and legally unsupported. *See Anderson v. Jutzy*, 175 F.Supp.3d 781, 788 (E.D. Mich. 2016). The undersigned accepts the rationale set forth in *Anderson* and treats the portion of defendants' motion that is based on failure to exhaust as one for summary judgment.

construed in the light most favorable to the non-moving party. *Matsushita Elec.*

*Indus. Co., Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986).

Where the movant establishes the lack of a genuine issue of material fact,

the burden of demonstrating the existence of such an issue shifts to the non-moving

party to come forward with "specific facts showing that there is a genuine issue for

trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  That is, the party

opposing a motion for summary judgment must make an affirmative showing with

proper evidence and must "designate specific facts in affidavits, depositions, or

other factual material showing 'evidence on which the jury could reasonably find

for the plaintiff.'" *Brown v. Scott*, 329 F.Supp.2d 905, 910 (6th Cir. 2004).

In order to fulfill this burden, the non-moving party need only demonstrate

the minimal standard that a jury could ostensibly find in his favor. *Anderson*, 477

U.S. at 248; *McLean v. 988011 Ontario*, *Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

However, mere allegations or denials in the non-movant's pleadings will not

satisfy this burden, nor will a mere scintilla of evidence supporting the non-moving

party. *Anderson*, 477 U.S. at 248, 251.

The Court's role is limited to determining whether there is a genuine dispute

about a material fact, that is, if the evidence in the case "is such that a reasonable

jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

Such a determination requires that the Court "view the evidence presented through

the prism of the substantive evidentiary burden" applicable to the case.  *Id*. at 254.

Thus, if the plaintiff must ultimately prove his case at trial by a preponderance of

the evidence, on a motion for summary judgment the Court must determine

whether a jury could reasonably find that the plaintiff's factual contentions are true

by a preponderance of the evidence.  *See id.* at 252-53.  Finally, if the nonmoving

party fails to make a sufficient showing on an essential element of its case with

respect to which it has the burden of proof, the movant is entitled to summary

judgment.  *Celotex*, 477 U.S. at 323.  The Court must construe Rule 56 with due

regard not only for the rights of those "asserting claims and defenses that are

adequately based in fact to have those claims and defenses tried to a jury," but also

for the rights of those "opposing such claims and defenses to demonstrate in the

manner provided by the Rule, prior to trial, that the claims and defenses have no

factual basis."  *Id*. at 327.

### 2.    Failure to State a Claim

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must first

comply with Rule 8(a)(2), which requires "'a short and plain statement of the claim

showing that the pleader is entitled to relief,' in order to 'give the defendant fair

notice of what the . . . claim is and the grounds upon which it rests.'"  *Bell Atlantic

Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (quoting *Conley v. Gibson*, 355 U.S.

41, 47 (1957)).  A plaintiff is also obliged "to provide the grounds of his

entitlement to relief," which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Association of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555 (citations and internal quotation marks omitted)).  And, while a complaint need not contain "detailed" factual allegations, its "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Id.* (quoting *Twombly*, 550 U.S. at 555 (citation and internal quotation marks omitted)); *see also League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (emphasis in original) (the factual allegations in a complaint need not be detailed but they "must do more than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to relief.").

The Sixth Circuit recognized that in *Erickson v. Pardus*, 551 U.S. 89 (2007), "a case decided just two weeks after *Twombly*, the Supreme Court clarified *Twombly* by holding that a prisoner bringing a § 1983 claim against his captor is not required to state [s]pecific facts in their complaint; and *Twombly* itself suggests that its holding may be limited to cases likely to produce sprawling, costly, and hugely time-consuming litigation." *U.S. v. Ford Motor Co.*, 532 F.3d 496 (6th Cir. 2008) (citations and internal quotation marks omitted).  The Sixth Circuit applied a

more stringent pleading standard in *U.S. v. Ford* because a fraud claim was involved, which requires the application of the heightened pleading standard set forth in Rule 9(b), rather than the more liberal pleading standard found in Rule 8(a)(2).  A complaint filed by a *pro se* plaintiff must be "liberally construed" and "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson*, 551 U.S. at 94 (citation omitted).  Thus, when applying *Twombly*, except as to a claim of fraud, the Court must still read plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519 (1972), and accept plaintiff's allegations as true, unless they are clearly irrational or wholly incredible.  *Denton v. Hernandez*, 504 U.S. 25, 33 (1992); *Erickson*, 551 U.S. at 93-94 (The Court of Appeals improperly departed "from the liberal pleading standards set forth by Rule 8(a)(2)" and failed to liberally construe" the *pro se* complaint at issue.).

   In ruling on defendants' motion to dismiss, the Court may consider the pleadings of the parties, including copies of any written instruments attached to a pleading as their attachment renders them a part of the pleading under Federal Rule of Civil Procedure 10(c).  *See also Commercial Money Center, Inc. v. Illinois Union Ins. Co.*, 508 F.3d 326, 335-336 (6th Cir. 2007) (Motion for judgment on the pleadings was not converted to motion for summary judgment by court's consideration of documents that were not attached to counterclaim, but were attached to the complaint and the answer to counterclaim).  The undersigned

recognizes that generally if a court considers matters outside of the pleadings, the court must convert the motion into one for summary judgment under Rule 56. However, "[w]hen a court is presented with a 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Coll. Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008); *see also Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997) (noting that the Sixth Circuit has "held that 'documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to h[is] claim'") (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)). "[I]n general, a court may only take judicial notice of a public record whose existence or contents prove facts whose accuracy cannot reasonably be questioned." *Passa v. City of Columbus*, 123 Fed. Appx. 694, 697 (6th Cir. 2005).

  B. <u>Exhaustions of Administrative Remedies</u>

    1. Standard

  Title 42 U.S.C. § 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until

such administrative remedies as are available are exhausted."  Section 1997e(a)'s

"exhaustion requirement applies to all prisoners seeking redress for prison

circumstances or occurrences." *Porter v. Nussle,* 534 U.S. 516, 520 (2002).  "[T]he

PLRA's exhaustion requirement applies to all inmate suits about prison life,

whether they involve general circumstances or particular episodes, and whether

they allege excessive force or some other wrong."  *Porter*, 534 U.S. at 532.  In

*Jones v. Bock,* 549 U.S. 199 (2007), the Supreme Court held that "failure to

exhaust is an affirmative defense under the PLRA," and "inmates are not required

to specially plead or demonstrate exhaustion in their complaints." *Jones,* 549 U.S.

at 216.  "Compliance with prison grievance procedures ... is all that is required by

the PLRA to 'properly exhaust.'"  *Jones,* 549 U.S. at 218.  "Congress has provided

in § 1997e(a) that an inmate must exhaust irrespective of the forms of relief sought

and offered through administrative avenues."  *Booth v. Churner,* 532 U.S. 731, 741

n. 6 (2001).  "[P]roper exhaustion of administrative remedies is necessary."

*Woodford v. Ngo*, 548 U.S. 81, 84 (2006).

In *Jones v. Bock*, the Supreme Court also held that the burden rests on the

defendant to show that a plaintiff failed to exhaust when asserting exhaustion as an

affirmative defense.  *Jones*, 549 U.S. at 218.  Accordingly, exhaustion is satisfied

if plaintiff complied with the applicable MDOC grievance procedure and

defendants bear the burden of showing otherwise.  *Kramer v. Wilkinson*, 226 Fed.

Appx. 461, 462 (6th Cir. 2007) (A prisoner-plaintiff "does not bear the burden of specially pleading and proving exhaustion; rather, this affirmative defense may serve as a basis for dismissal only if raised and proven by the defendants.").

A moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). "Where the moving party has the burden–the plaintiff on a claim for relief or the defendant on an affirmative defense–his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit has emphasized repeatedly that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561. Here, defendants bear the burden of proof on their affirmative defense of failure to exhaust administrative remedies.

2.    MDOC Grievance Procedure

Defendants set forth the administrative grievance process applicable to plaintiff's claims. Pursuant to MDOC policy directive 03.02.130 entitled "Prisoner/Parolee Grievances," there are four stages to the grievance process that a prisoner must follow before seeking judicial intervention, each with specific time

limits.  (Dkt. 16-4, Ex. C, MDOC Policy Directive 03.02.130, "Prisoner/Parolee Grievances" (effective date 07/09/2007)).  First, the prisoner must attempt to verbally resolve the issue with the staff member(s) involved within two business days of becoming aware of a grievable issue.  *Id*. ¶ P.  If the issue is not resolved, the prisoner may then file a Step I grievance, which must be accomplished within five business days of the attempted verbal resolution.  *Id*. ¶¶ P, V.  If the prisoner is not satisfied with the Step I outcome, or he does not receive a timely response, he must file a Step II appeal within 10 business days of response, or if, no response was received, within 10 business days of when the response was due.  *Id*. ¶ BB.  If the inmate is still not satisfied with the result, he must then file a Step III appeal within 10 business days of receiving the response, or if no response is provided, within 10 business days of when it was due.  The Step III response ends the administrative process.  *Id*.  ¶ FF.

When filing a grievance and/or grievance appeal, an inmate must state the facts involved with the issue being grieved, and must also include the "[d]ates, times, places, and names of all those involved in the issue being grieved."  *Id*.  ¶ R. A grievance may be rejected if it is vague, illegible, contains multiple unrelated issues, or raises issues that are duplicative of those raised in another grievance filed by the grievant.  *Id*. ¶ G.  A grievance may also be rejected if the grievance is untimely, but may not be rejected if there is a valid reason for the delay.  *Id*. ¶ G.4.

Grievances and grievance appeals at all steps are considered filed on the date

sent by the grievant.  The total grievance process from the point of filing a Step I

grievance to providing a Step III response must generally be completed within 120

calendar days unless an extension has been approved in writing by the Grievance

Coordinator at Step I and/or Step II.  According to the policy, an extension for a

Step I or II response may not exceed 15 business days unless the grievance falls

within the jurisdiction of the Internal Affairs Division.  The Grievance Coordinator

is required to immediately notify the grievant in writing whenever an extension has

been approved; the extension must also be noted in the grievance response.  *Id*.

¶ S.

        3.      Analysis

Defendants make two specific claims regarding exhaustion.  First,

defendants assert that none of plaintiff's grievances constitute proper exhaustion

with respect to defendant Russell.  Second, defendants claim that plaintiff's

retaliation claim is not exhausted.  They are correct in both instances.

As noted above, MDOC policy requires the prisoner to identify each person

involved in the alleged grievance in the Step I grievance report and provide a short

description of the issue being grieved.  The Sixth Circuit has recognized that

"ordinarily," a prisoner does not comply with the exhaustion requirement when he

does not identify those individuals involved in the activity underlying the

grievance in the Step I report. *Mattox v. Edelman*, 851 F.3d 583, 590-91 (6th Cir. 2017). According to defendants, this is especially true here, where the only claim of liability as to Russell is his purported failure to intervene when he could have – presumably, in the context of upholding the denials and rejections of Cary's grievances at the Step III. Defendants assert that MDOC staff cannot guess as to what issue or persons the prisoner is raising in the grievance process. They can only investigate and adjudicate the issues and responsible persons identified in the Step I grievance report. Defendants maintain that such claims are the only ones that can be considered properly exhausted and may, then, proceed through litigation.

Defendants also argue that the only grievance that alleges retaliation is identified as JCF-17-10-2571-28b, which was rejected at Step I because it was vague, illegible, and contained extraneous information. (Dkt. 16-3, Ex. B). In the Step II appeal, plaintiff identified two persons who allegedly retaliated against him – King and David Leach (who is not named in this lawsuit) – and he claims that they retaliated against him for transferring him to another housing unit. The rejection was upheld at Step II and Step III. Defendants argue that the rejection was proper because plaintiff failed to comply with MDOC's applicable procedural requirements, which renders an inmate unable to properly exhaust his

administrative remedies with respect to that claim. *See Richmond v. Settles*, 450

Fed. Appx. 448, 456-57 (6th Cir. 2011).

In response, plaintiff primarily focuses on the exhaustion of his other claims,

which are not at issue in this motion. Plaintiff does not challenge the rejection of

Grievance JCF-17-10-2571-28b.[2]  Rather, he points to a grievance filed against a

person not named in the present lawsuit, and his complaint that this corrections

officer confiscated herbs in his medicine bag and, then, returned them. (Dkt. 24, p.

9). Plaintiff claims filing a grievance regarding this "same matter" would not be

allowed. However, a claim that any named defendant retaliated against him based

on his having previously filed a lawsuit or a grievance is not the same issue as the

confiscation of his herbs. It is well-established that an inmate must grieve discrete

events in order to comply with exhaustions requirements. *Bean v. Tribley*, 2013

WL 3755768, *2 (W.D. Mich. 2013) (Bell, J.) ("[T]he denial of food trays to

Plaintiff by the officers on different occasions must be considered discrete events

---

[2] The undersigned concludes that the grievance was, in fact, properly rejected. Plaintiff wrote at Step I that "MDOC employees 1-4 in Lansing, Stewart, Smith, King and Laing are retaliating against me for filing other grievances and civil action about Native American religious objects." (Dkt. 16-3, Ex. B, Pg ID 141). Nothing in plaintiff's Step I grievance identifies any retaliatory action taken by any of the named persons. This grievance was properly rejected as being vague as to the actual issue being grieved. (Dkt. 16-3, Ex. B, Pg ID 140). The rejection was upheld at Steps II and III. (Dkt. 16-3, Ex. B, Pg ID 138, 140); *Burnett v. Howard*, 2010 WL 1286256, *1 (W.D. Mich. 2010) ("As long as the state clearly rejects a grievance for a reason explicitly set forth in the applicable grievance procedure, a subsequent § 1983 claim based on the grievance will be subject to dismissal for failure to properly exhaust."). And, at no stage did the MDOC address the merits of plaintiff's retaliation claim; thus this grievance was not properly exhausted. *See Reynolds-Bey v. Harris*, 28 Fed. Appx. 493, 502 (6th Cir. 2011).

involving separate facts and circumstances.  Consequently, Plaintiff was required to raise each denial of a food tray at Step I.") (citing *Siggers v. Campbell*, 652 F.3d 681 (6th Cir. 2011).  Here, plaintiff does not identify any grievance alleging retaliation which simply renders his retaliation claim not exhausted.  Thus, plaintiff's retaliation claim should be dismissed based on his failure to exhaust his administrative remedies.

The undersigned also agrees with defendants' observation in their reply that plaintiff does not appear to dispute the fact that he did not exhaust any claims against Russell.  Indeed, Russell is not one of the individuals identified as "all parties involved" in the grievances that plaintiff cites in his response.  (Dkt. 24, pp. 1-2).  Plaintiff says he later found that all parties involved were Leach, Stewart, Smith, and Laing.  *Id*.  Plaintiff simply does not respond to the assertion that he failed to name Russell in any grievance and does not offer any explanation as to why the Court should otherwise consider his claims against Russell to be exhausted.  Given plaintiff's apparent concession and the paucity of evidence of exhaustion relating to Russell, summary judgment should be granted in Russell's favor due to plaintiff's failure to exhaust.

C.     First Amendment – Free Exercise

According to defendants, the factual allegations in the complaint, at best, claim that King's decision following a hearing on the NOI was inconsistent with

MDOC policy and even if this were correct, defendants assert that it does not state a cognizable claim under the First Amendment. *Christian v. Mich. Dep't of Corrections*, 2014 U.S. Dist. LEXIS 36560, *8-9 (E.D. Mich. Mar. 20, 2014) (prison policy does not create a protectable interest and, therefore, is insufficient to support a claim under Section 1983); *see also Roberts v. City of Troy*, 773 F. 2d 720, 726 (6th Cir. 1985). Defendants maintain it is undisputed that plaintiff can practice his religion and possess certain items of personal property integral to this practice. (Dkt. 1, Ex. B, Pg ID 10-13). According to defendants, the complaint lacks any factual allegations justifying his claim that possessing the bag of herbs in his cell, rather than in the Chaplain's office, or otherwise, prevents or even interferes with the practice of his religion. Rather, according to defendants, it appears from the complaint that plaintiff simply disagrees with the staff's interpretation of policy on the issue. As such, defendants argue that plaintiff's complaint does not rise to the level of a constitutional violation.

In response, plaintiff argues that defendants are attempting to mislead the Court into believing that he is arguing that a violation of policy creates a constitutional claim. Plaintiff does argue that defendants misconstrue their own policy. However, he further contends that they do so in order to justify their wrongful confiscation of his herbs that did not fit into his medicine bag, in spite of a policy expressly permitting him to have them. Plaintiff argues that he has a

constitutional right to possess the herbs so that he can pray, make offerings, and have protection.  Plaintiff contends that this misconstruction of their own policies violates his First Amendment Free Exercise rights.  He also contends that holding his herbs in the Chaplain's office does in fact interfere with his ability to practice his religion because he does not have ready access to them, which necessarily, interfering with his ability to pray and practice his religion.  He states that defendants have completely denied access to the herbs since October 10, 2017, and avers that even if he could get access, the process for kiting the request takes two to three days, resulting in multiple days in which he would be restricted from praying, having protection and making offerings.  Citing *Elrod v. Burns*, 427 U.S. 347, he avers that even short deprivations of First Amendment rights may cause irreparable injury.

The defendants' first ground for challenging plaintiff's Free Exercise claim seems to understate plaintiff's complaint allegations.  In sum, plaintiff alleges that defendants' interpretation and application of PD 05.03.150 unduly interferes with the practice of his religion.  While it is true that an alleged violation of a policy directive does not necessarily equate to a constitutional violation, that is not what plaintiff's complaint alleges.  Rather, after extended discussion about the meaning and interpretation of the policy, plaintiff claims that PD 05.03.150, as applied to him by defendants, violated his First Amendment rights.  Indeed, plaintiff plainly

alleges: "The herbs are allowed.  Plaintiff can't pray or make offerings without

them.  Therefore, the illegal taking and restriction of the herbs violates Plantiffs

[sic] Right of Free Exercise."  (Dkt. 1, Pg ID 2).   He later states, "the herbs were

taken and restricted … (and) Laing is denying access to the herbs.  Plaintiff had

Officer Prins call several times requesting herbs for the medicine Bag [sic].

Chaplain Laing refuses."  (*Id*.)  "In an as-applied challenge, 'the plaintiff contends

that application of the statute in the particular context in which he has acted, or in

which he proposes to act, would be [invalid].'"  *Burns v. Heyns*, 2015 WL

4391983, at *4 (W.D. Mich. July 15, 2015) (quoting *Women's Med. Prof'l Corp. v.

Voinovich*, 130 F.3d 187, 194 (6th Cir. 1997) (citation omitted); *see also Beebe v.

Birkett*, 749 F.Supp.2d 580, 587 (E.D. Mich. 2010).  Defendants merely argue that

a violation of policy cannot be a constitutional violation, and then point out that the

policy itself (which plaintiff challenges as applied) permits plaintiff to practice his

religion.  This argument appears to mismatch the claim.  As explained in *Flagner

v. Wilkinson*, 241 F.3d 475, 483 (6th Cir. 2001), "[i]n considering a challenge to a

prison policy as applied, the proper inquiry is whether the actions of the prison

officials are reasonably related to legitimate penological interests." *Id.* (quoting

*Skelton v. Pri-Cor, Inc.*, 963 F.2d 100, 103 (6th Cir. 1991) (citing *Thornburgh v.

Abbott*, 490 U.S. 401 (1989)); *see also Turner v. Safley*, 482 U.S. 78, 89 (1987)

("[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests.")).

In considering a motion to dismiss, the undersigned must take all factual allegations in the complaint as true. Defendants do not offer any argument as to how the policy as applied to plaintiff, taking all factual allegations in the complaint as true, is reasonably related to legitimate penalogical interests, or whether plaintiff is required to include such allegations in the complaint. To the extent plaintiff must do so, the allegations in plaintiff's complaint suggest that defendants' actions are not reasonably related to a legitimate penalogical interest. Plaintiff generally alleges that he requires the herbs in order to pray and that defendants wrongfully restricted his access to them, in violation of the policy provisions and the constitution. More specifically, plaintiff also attached to his complaint, the affidavits of fellow prisoners who apparently maintain medicine bags (referencing "my medicine bag") averring that their cells have never been searched for herbs outside of their bags, and that they have never been told that herbs outside of the bags are considered excess property. While this fact does nothing to help plaintiff's Equal Protection claim, *infra,* as he has posited, it would appear to support plaintiff's complaint averment that herbs have been permitted despite the facility's right to disallow items deemed "a threat to the safety, security and good

order of the facility" (Dkt. 1, Pg ID 4), thus tending to undermine the notion that plaintiff's items were removed in service of a valid penological interest.[3]

Defendants' second argument, flatly propounding that restricting plaintiff's access to the herbs in the manner described in plaintiff's complaint does not rise to a constitutional level, cites no authority for its conclusion. Rather, defendants merely point to PD 05.03.150. This approach is both circular and unavailing. To the extent that any valid argument may exist, it is not fleshed out on the instant briefing and the Court declines to develop defendants' argument in this regard for them. *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("[I]ssues adverted to in perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to put flesh on its bones."). Defendants' motion to dismiss plaintiff's First Amendment Free Exercise claims should be denied.

---

[3] In their reply, defendants point out that none of the declarants state that they are practitioners of the Native American religion or that they maintain religious property outside of their medicine bags. While both observations are accurate, a reasonable inference can be made that individuals referencing "my medicine bag," and who are allowed to maintain a medicine bag in their cells are adherents of a religion allowed to maintain the same. Similarly, while at first blush the omission of a statement regarding whether the declarants maintained herbs outside of their bags depletes their probative value, viewed in a light most favorable to plaintiff, the declarations are not without redeeming worth. To wit, since plaintiff's contention is that the policy as applied to him violated his individual right, it remains relevant to know whether others who maintained medicine bags in their cells were searched or queried about the existence of herbs outside of their medicine bags in service of PD 03.05.150.

D.   Equal Protection

Defendants argue that plaintiff's under the Equal Protection Clause claim

fails because there is no factual allegation supporting a claim that the herbs were

taken with a discriminatory intent or purpose.  The Equal Protection Clause

prohibits a state from denying "equal protection of the laws."  U.S. Const. Amend.

XIV § 1.  According to defendants, at best, plaintiff's allegation is that MDOC

policy was enforced or applied differently against him, as compared to other

Native American prisoners.  Defendants assert that this is not a cognizable claim

under the Equal Protection Clause.  According to defendants, it is undisputed that

plaintiff could keep the herbs in a secure location in the Chaplain's office, and

request access to them during operation hours.  He initially agreed to this, and then

rescinded that agreement because he believed MDOC policy did not require it.

After a hearing and investigation, the hearing officer disagreed.  The policy

attached to the NOI, and included with plaintiff's complaint, identifies several

other religions with comparable limitations on the number of items considered

sacred property that may be kept in the prisoner's personal possession.  (Dkt. 1,

Ex. B, Pg ID 10).  Defendants assert that the factual allegations in the complaint do

not support a claim that any named defendant intentionally discriminated against

him based on his race or religion here.  Accordingly, defendants maintain that plaintiff fails to state a cognizable claim under the Equal Protection Clause.

In response, plaintiff contends that there are factual allegations in the complaint that the herbs were taken with discriminatory intent or purpose.   In response to his grievance about staff mistreatment of his herbs, staff took the herbs because plaintiff "made a big deal out of the situation."   Plaintiff contends, however, that there is no written rule, regulation, or policy stating that the herbs must be in the medicine bag or that herbs outside the medicine bag are contraband. That only plaintiff is subject to his mistreatment is evidence of discriminatory intent, according to plaintiff.

Plaintiff seemingly makes two Equal Protection claims in his complaint. First, he claims that he was treated differently than other prisoners who practiced the same religion regarding the same or similar religious property.  He attached declarations from other prisoners who apparently also practice NATW, who indicated that their cells were not searched for sacred herbs outside of their medicine bags and who indicated that they were never told that herbs outside of their medicine bags were considered excess property.  (Dkt. 1, Ex. D, Pg ID 14-17).  In addition, plaintiff alleges that prisoners who practiced other religions were permitted to keep their religious texts and property without interference, in contrast to his religious property (the sacred herbs) being confiscated.

The Equal Protection Clause of the Fourteenth Amendment "protects against invidious discrimination among similarly-situated individuals or implicating fundamental rights." *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006). Here, plaintiff's claim implicates a fundamental right, that of free exercise of his religion. *See Edelstein v. Stephens*, 2018 WL 1558868, at *3 (S.D. Ohio Mar. 31, 2018) ("This Court explained that unless the law impinges on the plaintiff's fundamental rights of freedom of association or to free exercise of religion then the statute will be upheld if it bears a rational relationship to a legitimate end."). Where the government classification is based on religion, or burdens the exercise of religion, strict scrutiny applies. *Sareini v. Burnett*, 2011 WL 1303399, at *7 (E.D. Mich. Mar. 31, 2011) (citing *Bowman v. United States*, 304 Fed. Appx. 371, 378 (6th Cir. 2008)). In order to prevail in his claim for violation of the Equal Protection Clause, plaintiff must show that he was similarly situated in all material respects to others whose treatment he desires, coupled with a discriminatory purpose on the part of the accused state actor(s). *Village of Arlington Heights v. Metropolitan Hous. Dev. Corp.*, 429 U.S. 252, 265-266 (1977); *Taylor Acquisitions, L.L.C. v. City of Taylor*, 313 Fed. Appx. 826, 836 (6th Cir. 2009). As explained in *DeSoto v. Board of Parks and Recreation*, 64 F.Supp.3d 1070, 1090 (M.D. Tenn. 2014), the essence of an equal protection claim is disparate treatment of the plaintiff relative to others: thus, "[t]o state an equal

protection claim, a plaintiff must adequately plead that the government [treats certain people] disparately as compared to similarly situated persons and that such disparate treatment either [sic] burdens a fundamental right, targets a suspect class, or has no rational basis." *Id.* (quoting *Raymond v. O'Connor*, 526 Fed. Appx. 526, 530 (6th Cir. 2013) (quoting *Ctr. for Bio-Ethical Reform*, *Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011)).

Critically, "the appropriate comparison is between those persons subject to the classification and those persons who are similarly situated but for the classification." *Jordan v. Caruso*, 2009 WL 2960031, at *14 (E.D. Mich. June 11, 2009), report and recommendation adopted, 2009 WL 2960030 (E.D. Mich. Sept. 14, 2009) (quoting *Maldonado v. Houstoun*, 157 F.3d 179, 187 (3d Cir.1998); *see also United States v. Armstrong*, 517 U.S. 456, 465 (1996) (with regard to a selective-prosecution claim, "[t]o establish a discriminatory effect in a race case, the claimant must show that similarly situated individuals of a different race were not prosecuted."); *Boone v. Spurgess*, 385 F.3d 923, 932 (6th Cir. 2004) ("In order to make out an equal protection claim on the basis of selective enforcement, a plaintiff must demonstrate that someone similarly situated but for the illegitimate classification used by the government actor was treated differently.").  Thus, in *Jordan*, the proper comparison was not whether the plaintiff's complaint set forth sufficient facts showing that the defendants treated him differently than other

similarly situated Muslim inmates, but whether his claims alleged that the was treated differently from similarly situated inmates without religious, cultural, or Islamic names. *Id*. at *14-15. Thus, to the extent that plaintiff's Equal Protection claim is based on allegations that he was treated differently from other Native American inmates, it fails to state a claim.

However, to the extent that plaintiff alleges that he was treated differently from non-NATW inmates based on similar conduct, such a claim could survive Rule 12(b)(6), if there are sufficient factual allegations in the complaint from which such an inference may be drawn. Defendants argue that plaintiff failed to allege that the herbs were taken with a discriminatory intent or purpose. An intent to discriminate under the Equal Protection clause is merely the intent to treat differently. *Maye v. Klee*, 2018 WL 3259786, at *11 (E.D. Mich. Jan. 24, 2018), report and recommendation adopted, 2018 WL 1384234 (E.D. Mich. Mar. 19, 2018) (citing *Colorado Christian Univ. v. Weaver*, 534 F.3d 1245 (10th Cir. 2008) ("Even in the context of race, where the nondiscrimination norm is most vigilantly enforced, the Court has never required proof of discriminatory animus, hatred, or bigotry."). Nevertheless, even construing plaintiff's complaint liberally, and taking all allegations contained therein as true, the undersigned finds that plaintiff has not sufficiently stated an Equal Protection claim based on the allegations that his religious property was confiscated while the religious property of non-NATW

practitioners was not.  To begin with, he does not allege that he was treated

differently because he practices NATW.  Indeed, plaintiff's complaint and the

attached declarations suggest that other NATW practitioners were permitted to

keep their religious property in their cells without interference – suggesting that his

NATW faith was not the reason for the confiscation and restriction.  Further,

plaintiff's complaint suggests that he alone was singled out to have his religious

property confiscated and that it was in retaliation because he "made a big deal," not

that he was treated differently because of his religion as compared to practitioners

of other faiths.  Thus, taken together, notwithstanding the one complaint reference

to other unspecified inmates being permitted to keep non-NATW religious items in

their cells, plaintiff's complaint does not state a plausible Equal Protection claim

and should be dismissed in this regard.

     E.    <u>Due Process</u>

Due process claims encompass two rights: (1) substantive due process,

which "prevents the government from engaging in conduct that 'shocks the

conscience'" and (2) procedural due process which requires that deprivation of a

protected liberty or property interest be implemented in a "fair manner."  *United*

*States v. Salerno*, 481 U.S. 739, 746-47 (1987).  Each due process claim will be

addressed in turn.

Defendants argue that neither the alleged "rude" statement by King nor the fact that an alleged "fact finding" hearing was ended rises to the level of a substantive due process claim.   For a plaintiff to state a claim alleging a violation of his substantive due process rights, the plaintiff generally is required to "demonstrate a deprivation of a constitutionally protected liberty or property interest[.]"  *Parrino v. Price*, 869 F.3d 392, 397 (6th Cir. 2017) (quoting *Am. Exp. Travel Related Servs. Co. v. Kentucky*, 641 F.3d 685, 688 (6th Cir. 2011)). "Where government action does not deprive a plaintiff of a particular constitutional guarantee or shock the conscience, that action survives the scythe of substantive due process so long as it is rationally related to a legitimate state interest."  *Valot v. Se. Local Sch. Dist. Bd. of Educ.*, 107 F.3d 1220, 1228 (6th Cir. 1997) (citations omitted).

Here, plaintiff's substantive due process claim fails because the First Amendment provides a more specific source of constitutional protection.  "Where a particular [a]mendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that [a]mendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing such a claim."  *Albright v. Oliver*, 510 U.S. 266, 266 (1994) (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)) (holding that the Fourth Amendment, not substantive due process, provides the standard for analyzing

claims involving unreasonable search or seizure of free citizens, and the Eighth

Amendment provides the standard for such searches of prisoners)).  If such an

amendment exists, the substantive due process claim is properly dismissed.

*Richards v. Snyder*, 2015 WL 3658836, at *8 (W.D. Mich. June 12, 2015) (citing

*Heike v. Guevara*, 519 Fed. Appx. 911, 923 (6th Cir. 2013)).  Thus, plaintiff's

substantive due process claim is properly dismissed because the First Amendment

provides an "explicit textual source of constitutional protection" for his Free

Exercise claim.  *Id.* at *12.

     To establish a procedural due process violation, a plaintiff must prove that

(1) he was deprived of a protected liberty or property interest, and (2) such

deprivation occurred without the requisite due process of law.  *Club Italia Soccer*

*& Sports Org., Inc. v. Charter Twp. of Shelby*, 470 F.3d 286, 296 (6th Cir. 2006);

*see also Swihart v. Wilkinson*, 209 Fed. Appx. 456, 458 (6th Cir. 2006). In *Sandin*

*v. Conner*, 515 U.S. 472, 484 (1995), the Court set forth the standard for

determining when a state-created right creates a federally cognizable liberty

interest protected by the Due Process Clause.  According to the Court, a prisoner is

entitled to the protections of due process only when a deprivation imposes an

"atypical and significant hardship on the inmate in relation to the ordinary

incidents of prison life."  *Sandin*, 515 U.S. at 484; *see also Wilkinson v. Austin*,

545 U.S. 209 (2005); *Jones v. Baker*, 155 F.3d 810, 812 (6th Cir.1998); *Rimmer-*

*Bey v. Brown*, 62 F.3d 789, 790-91 (6th Cir. 1995).  Defendants maintain that the allegations in the complaint fail to state a cognizable procedural due process claim because plaintiff's property was confiscated pursuant to MDOC policy. Defendants acknowledge that the confiscation of plaintiff's excess property was pursuant to policy and was something atypical of that experienced in the prison setting.[4]  In addition, defendants point out that plaintiff received at least minimal due process prior to confiscation, including advance written notice (i.e., the NOI) and a hearing conducted shortly thereafter.  To the extent that plaintiff was denied an additional "fact finding" hearing with ARUS Dross, defendants contend that he does not identify any protected liberty or property interest lost in connection with this proceeding and certainly not to the extent to support a constitutional claim. Thus, defendants maintain that plaintiff's due process claim against King is subject to dismissal as a matter of law.  Defendants also ask for summary judgment in the alternative on this claim and include reference to a grievance report attached to their motion for summary judgment.  (Dkt. 16, pp. 16-17, Dkt. 16-2, Ex. A).  The

---

[4]  Even in the absence of a protectable liberty interest in disciplinary credits, a prisoner may be able to raise a due-process challenge to prison misconduct convictions that result in a significant, atypical deprivation.  *Kinney v. Horton*, 2018 WL 3751402, at *3 (W.D. Mich. Aug. 8, 2018) (citing *Sandin v. Connor*, 515 U.S. 472 (1995)).  Here, defendants appear to concede that plaintiff's deprivation was atypical, thus triggering his right to procedural due process.

undersigned will consider this exhibit and addresses the procedural due process claim under Rule 56, rather than Rule 12(b)(6).

Due process of law gives the person the opportunity to convince an unbiased decision maker that, for example, he has been wrongly or falsely accused or that the evidence against him is false. *Zinermon v. Burch*, 494 U.S. 113, 127-28 (1990). The Due Process Clause does not, however, guarantee that the procedure will produce a correct decision. *Crump v. McBurney*, 2009 WL 3233897, at *10 (W.D. Mich. Sept. 30, 2009) (quoting *Martinez v. California*, 444 U.S. 277, 284, n. 9 (1980) ("It must be remembered that even if a state decision does deprive an individual of life, [liberty], or property, and even if that decision is erroneous, it does not necessarily follow that the decision violated that individual's right to due process."). "[T]he deprivation by state action of a constitutionally protected interest in 'life, liberty or property' is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest *without due process of law*." *Zinermon*, 494 U.S. at 125 (emphasis in original). Plaintiff seemingly concedes in his response brief that a hearing was held, but his real complaint is that the decision was wrong and was based on an incorrect policy interpretation.[5] (Dkt. 24,

---

[5] Plaintiff's argument suggests his belief that "falsified" documents were used during his hearing, but plaintiff's disagreement with how defendants' interpreted their policy does not rise to the level of using fabricated evidence or perjured testimony during a hearing, which would be a substantive due process violation. *Chancellor v. City of Detroit*, 454 F. Supp. 2d 645, 659 (E.D. Mich. 2006) (noting that the Supreme Court held in *Pyle v. Kansas*, 317 U.S. 213, 216 (1942), that "'perjured testimony knowingly used by the state authorities to sustain [defendant's]

pp. 7-8).  This does not constitute a due process violation.  As evidenced in the

Administrative Hearing Report attached to defendants' motion, defendant King

held a hearing on the NOI and considered plaintiff's argument that prison officials

were not interpreting the policy correctly.  (Dkt. 16-2, Ex. A).  This is precisely the

process that was due plaintiff.

Plaintiff also alleges that he was denied copies of certain documents, during

another hearing with ARUS Doss, but does not explain how this violated his right

to procedural due process in relation to the confiscation of his herbs.  (Dkt. 1, p. 2).

Just as in *Crump*, plaintiff received a hearing on the NOI, during which he was

able to present his side of the issue.  Thus, plaintiff has not created a material

question of fact regarding his receipt of procedural due process on the confiscation

of his herbs.

F.    Ethnic Intimidation

Plaintiff asserts a claim of Ethnic Intimidation under Michigan law.  As

observed by several courts, "[t]here is little case law applying § 750.147b at all,

and an even greater dearth of authority applying the statute in a civil action."  *Cary*

*v. Robinson*, 2016 WL 4367532, at *5 (W.D. Mich. May 25, 2016) (Kent, M.J.),

report and recommendation adopted, 2016 WL 4264265 (W.D. Mich. Aug. 12,

---

conviction' and 'deliberate suppression by these same authorities of evidence favorable to him'
violates the Constitution.").

2016) (Jonker, J.) (quoting *Austin v. Redford Township Police Department*, 859 F. Supp. 2d 883, 908 (E.D. Mich. 2011) (Lawson, J.), affirmed, 690 F.3d 490 (6th Cir. 2012). To state a *prima facie* case of civil ethnic intimidation under Mich. Comp. Laws § 740.147b(3), Michigan Courts require physical contact, damage to property or a threat involving such contact or damage, accompanied by either a direct reference to race or national origin, or, circumstantial evidence of a racist motive. *Cary v. Robinson*, *5 (citing *Imtiaz v. Board of Regents of University of Michigan*, 2006 WL 510057 at *9 (Mich. App. March 2, 2006)). However, Michigan courts have not addressed how a civil action for ethnic intimidation applies to individuals in government custody. *Cary v. Robinson*, at *6. The *Cary v. Robinson* court noted the difficult position for the court under such circumstances:

> Given plaintiff's allegations, this Court is placed in the position of deciding as a matter of first impression whether a prisoner can state a civil cause of action for ethnic intimidation against a prison employee when the alleged injury is damage to contraband. Under the circumstances of this case, the undersigned concludes that this is a novel question of state law which should be decided by the state court.

*Id*. The court concluded that it should decline to exercise supplemental jurisdiction over this claim because it "raise[d] a novel or complex issue of State law." *Id*. (quoting 28 U.S.C. § 1367(c)(1)). The allegations in this case – that defendants are clearly singling out plaintiff because of his race and religion and that defendants

are trying to destroy his herbs, which is a threat to property that defendants have deemed contraband – raises similar concerns.  Thus, the undersigned suggests that the Court decline to exercise supplemental jurisdiction over plaintiff's Ethnic Intimidation claim and dismiss it without prejudice.

## IV.    RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that defendants' motion for summary judgment as to plaintiff's retaliation claim and as to any claims against defendant Russell be **GRANTED** for failure to exhaust administrative remedies.  The undersigned further **RECOMMENDS** that defendants' motion to dismiss plaintiff's First Amendment Free Exercise claim be **DENIED**, that defendants' motion for dismiss plaintiff's Equal Protection claim be **GRANTED**, that defendants' motion to dismiss plaintiff's substantive due process claim be **GRANTED**, and that defendants' motion for summary judgment on plaintiff's procedural due process claim be **GRANTED**.  Finally, the undersigned **RECOMMENDS** that the Court decline to exercise supplemental jurisdiction over plaintiff's state law Ethnic Intimidation claim, and **DISMISS** this claim without prejudice.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule

72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: August 17, 2018                     <u>s/Stephanie Dawkins Davis</u>
                                          Stephanie Dawkins Davis
                                          United States Magistrate Judge

## <u>CERTIFICATE OF SERVICE</u>

     I certify that on <u>August 17, 2018</u>, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to all counsel of record and I have mailed by United States Postal Service to the following non-ECF participant: <u>Bryan Cary #269436, Gus Harrison Correctional Facility, 2727 E. Beecher Street, Adrian, MI 49221</u>.

<u>s/Tammy Hallwood</u>
Case Manager
(810) 341-7887
tammy_hallwood@mied.uscourts.gov
